UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| VICTORIA LEET, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>v.<br><br>HOSPITAL SERVICE DISTRICT NO. 1 OF EAST BATON ROUGE PARISH, LOUISIANA, D/B/A LANE REGIONAL MEDICAL CENTER *ET AL.*, | Case No. 3:15-cv-00811-JWD-EWD |

**RULING AND ORDER**

**I.     INTRODUCTION**

Before the Court is the Rule 12(c) Motion for Judgment on the Pleadings ("Rule 12 Motion"), (Doc. 11), filed by Alegis Revenue Group LLC[1] ("Alegis" or "Defendant"), one of three defendants in this proceeding. In this purported class action,[2] Ms. Victoria Leet ("Leet" or "Plaintiff") has responded with the Plaintiffs' Opposition to Motion for Judgment on the Pleadings Filed by Alegis ("Opposition"), (Doc. 15), to which Alegis has countered with the Memorandum in Reply to Plaintiff's Opposition to Alegis Revenue Solutions, LLC's Motion for

---

[1] Defendant uses two different names in this proceeding: Alegis Revenue Group LLC and Alegis Revenue Solutions LLC. (*Compare* Doc. 11 at 1, *and* Doc. 8 at 5, *with* Doc. 26 at 1.)

[2] Although this case has not yet been so classified, Plaintiff titles all her filings with the plural "Plaintiffs," a common custom. (*See, e.g.*, Doc. 15 at 1.) Nonetheless, as only one plaintiff now exists, this Court opts for the singular in this Ruling and Order ("Ruling"). No hearing on class certification has yet been scheduled, and briefing will not end until August 5, 2016. (Doc. 10 at 1–2.)

Judgment on the Pleadings Filed by Alegis ("Reply"), (Doc. 26). The instant dispute between Alegis and Leet (collectively, "Parties") centers on the applicability of the Fair Debt Collection Practices Act ("FDCPA"), as approved on September 20, 1977, and as subsequently amended,[3] to Alegis' interactions with Leet in the summer of 2014.

Focusing upon the statutory language, Alegis maintains that the medical lien against Leet is not a "debt" and that it is not a "debt collector" as those two terms are defined in § 1692a; moving beyond the FDCPA's plain text, Alegis urges this Court to follow an apparent judicial majority and hold that the FDCPA does not apply to communications solely directed towards a debtor's attorney. As the pleadings compel any one of these determinations, Defendant asserts that Plaintiff's existing claims against Alegis must be dismissed pursuant to Federal Rule of Civil Procedure 12(c).[4] According Plaintiff, none of Alegis' points withstand scrutiny, and the FDCPA's applicability is clear. Having considered the Parties' arguments and submissions, the Court concludes that the FDCPA's unique definition of "debt collector," exempts Alegis from its coverage. For this reason,[5] as more fully explained below, this Court GRANTS Alegis' Rule 12 Motion.

---

[3] In this Ruling, the specific provisions of this statute, set forth in 15 U.S.C. §§ 1692–1692p inclusive, are referred to in this article as "Section _" or "§ _" unless otherwise noted.

[4] In this Ruling, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[5] As the Court relies purely on this ground, this Ruling does not analyze or rule on the other reasons for dismissal raised in Alegis' Rule 12 Motion. *Cf. Lisa Ng. v Adler (In re Adler)*, 494 B.R. 43, 56 (Bankr. E.D.N.Y. 2013).

## II. BACKGROUND

### A. Relevant Facts

On or about May 29, 2014, Leet was involved in a motor vehicle crash that resulted in serious injuries for which medical attention was required. (Doc. 1-1 at 2, 17, 35; Doc. 8 at 1; Doc. 11-1 at 3.) At the time of this accident, Leet was covered by a health insurance policy with Blue Cross Blue Shield of Louisiana ("BCBSLA"), which classified her as "an enrollee" or "insured" under Louisiana law.[6] (Doc. 1-1 at 2, 17, 35; Doc. 8 at 1; Doc. 11-1 at 3.) For her injuries, Plaintiff was treated at the Lane Regional Medical Center ("Lane Regional") in Zachary, East Baton Rouge Parish, Louisiana, "a full service medical care center and emergency room" operated by the Hospital Service District of Number 1 of East Baton Rouge Parish ("Service District") and which is one of BCBSLA's contracted health care providers. (Doc. 1-1 at 2–3, 17–18, 35; Doc. 8 at 1; Doc. 11-1 at 3–4.) The bill totaled charged $8,789.35. (Doc. 1-1 at 2, 17–18; Doc. 8 at 2; Doc. 11-1 at 3.)

Afterward, in accordance with state law, La. R.S. § 22:1874 *et seq.*, Lane Regional filed a claim for this amount with BCBSLA in its capacity as Plaintiff's insurer and received payment of $1,477.74 with no patient deductible, co-pay, or co-insurance required. (Doc. 1-1 at 2–3, 18, 36; Doc. 8 at 2; Doc. 11-1 at 4.) As Plaintiff construes the relevant contract and state law, though Lane Regional charged $8,789.35 and obtained only $1,477.74, it had been "paid in full" per the pertinent contract and applicable law. (Doc. 1-1 at 3, 18–19, 36; *see also* Doc. 11-1 at 4.)

In June of 2014,[7] Lane Regional retained Alegis "to act as its agent to collect" this sum. (Doc. 1-1 at 3–4, 18–19, 36; Doc. 8 at 5–6; Doc. 11-1 at 4.) On June 24, 2014, Alegis, in turn,

---

[6] The relevant provision is Louisiana Revised Statutes § 22:1872.

[7] It is not clear whether the medical lien predated the payment made by BCBSLA, as the precise date does not appear in the Parties' papers.

served a medical lien ("Lien") on Leet's attorney, Mr. Andrew D'Aquilla ("D'Aquilla"). (Doc. 1-1 at 3–4, 18–19, 36; Doc. 8 at 5–6; Doc. 11-1 at 4.) On August 21, 2014, US Agencies Casualty Insurance Company, "the liability insurance company for the third party who caused" Leet's accident, paid to Lane Regional the full sum owed—$8,789.35—pursuant to the medical lien obtained by Alegis. (Doc. 1-1 at 4, 19, 37; Doc. 11-1 at 4.)

On November 5, 2014, BCBSLA notified Lane Regional of its obligation under the provider agreement to accept the sum of $1,477.74 and refund any amounts over that number to Leet within thirty days. (Doc. 1-1 at 4, 19, 37; Doc. 8 at 2.) Despite this demand, Lane Regional allegedly issued a refund of $1,477.74 to Leet and "refused to refund" the full sum paid by BCBSLA. (Doc. 1-1 at 4, 19, 37; Doc. 11-1 at 4.)

As Alegis stresses and the pleadings establish, its "only involvement in the conduct complained of is that it filed . . . [the L]ien . . . on behalf of Lane Regional with Plaintiff's attorney." (Doc. 8 at 6; *see also* Doc. 1-1 at 44–46; *cf.* Doc. 15 at 5, 14–15.)

**B.     Procedural History**

This action began with the filing of a class action petition in the Twentieth Judicial District Court, Parish of West Feliciana, of the State of Louisiana, on December 10, 2014. (Doc. 1-1 at 1, 16.) In this first filing, Leet named three persons as defendants: BCBSLA; the Service District in its role as the operator of Lane Regional; and Alegis. (*Id.*) However, while Alegis had always been a named defendant, Leet's FDCPA claim against Alegis first appeared in the Second Amending and Supplemental Class Action Petition, dated October 13, 2015 ("Relevant Complaint"). (Doc. 1-1 at 44–46; Doc. 8 at 5–6.) Eventually, the action was transferred from the Twentieth Judicial District Court to the Nineteenth Judicial District Court. (Doc. 24.)

On December 1, 2015, BCBSLA removed Plaintiff's action to this Court. (Doc. 1.) An amended notice of removal followed on December 2, 2015. (Doc. 3.) The Service District and BCBSLA answered on December 22, 2015, and January 28, 2016, respectively. (Docs. 6, 9.) Alegis filed the Rule 12 Motion on February 15, 2016. (Doc. 11.) On March 9, 2016, Plaintiff submitted the Opposition. (Docs. 15, 18.) The Reply came on March 24, 2016. (Doc. 31.) On May 3, 2016, this Court scheduled a hearing on the Rule 12 Motion for June 15, 2016. (Doc. 32.)

C.  **Parties' Arguments**

The Parties' contentions can be easily summarized.

For three reasons, Alegis urges dismissal of the FDCPA claims plead against it by Leet. (Doc. 11-1 at 2 –3; Doc. 31 at 1–2.) First, by serving the Lien, Alegis was not "acting as a 'debt collector' as defined by the FDCPA." (Doc. 11-1 at 7; Doc. 31 at 3–4 True, the FDCPA does define a "debt collector" as "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." (Doc. 11-1 at 7–8 (citing 15 U.S.C. § 1692a(6)); *see also* Doc. 31 at 3.) However, an exception appears in paragraph F for those entities "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." (Doc. 11-1 at 8 (citing 15 U.S.C. § 1692a(6)(F)(iii); *see also* Doc. 31 at 3.) Factually and incontestably, Alegis served the Lien on June 24, 2014, and thus before August 21, 2014, the date on which Leet first "received any third party payments to which it might apply." (Doc. 11-1 at 8, 11 (relying on, among others, *Hamilton v. Trover Solutions, Inc.*, Civ. No. 01-650 Section "J"(4),

2003 U.S. Dist. LEXIS 8296, 2003 WL 21105100 (E.D. La. May 13, 2003), and *Dantin v. Rawlings Co., LLC*, No. 03-116-A, 2005 U.S. Dist. LEXIS 46182, 2005 WL 6075786 (M.D. La. Apr. 13, 2005)); *see also* Doc. 31 at 3–5.) As such, the Lien concerned an obligation that "was not in default at the time it was obtained by Alegis, and Alegis was thus not acting as a 'debt collector' within the scope of [the] FDCPA." (Doc. 11-1 at 11; *see also* Doc. 31 at 3–5.)

Second, Alegis never actually attempted to collect a "debt," as that term is defined by the FDCPA, as the Lien does not represent an "amount[] payable only to third parties." (Doc. 11-1 at 11 (citing to *Gacy v. Gammage & Burnham*, 2006 U.S. Dist. LEXIS 8525, 2006 WL 467937 (D. Ariz. Feb. 23, 2006)); Doc. 31 at 5–6.) Lastly, as a number of different courts have ruled, "communications addressed solely to a debtor's attorney," as transpired here, "do not fall within the ambit of the FDCPA." (Doc. 11-1 at 13–14 (citing, among others, *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007), and *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002)); *see also* Doc. 31 at 6.) Whether independently or cumulatively weighed, Alegis contends that these three reasons mandate dismissal.

Ignoring the fact that her claim under Louisiana's Anti-Balance Billing Statute ("Billing Statute") has already been dismissed, (Doc. 26 at 2–3; Doc. 31 at 2 –3),[8] Plaintiff begins with a summary of the purposes of both the Billing Statute and the FDCPA, (Doc. 15 at 5–9). Afterward, she articulates three rejoinders to Alegis' arguments. First, Leet argues that Alegis is, in fact, a "debt collector" because the Lien is no more than "a security device used to collect from the patient an amount owed by the patient" and attempts to distinguish Alegis' case law.

---

[8] This claim was dismissed by the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana. (Doc. 24.) The court did so at the conclusion of oral argument and without issuing a written opinion. Whether this decision binds this Court will be the subject of further briefing requested by this Court at the conclusion of the hearing held on June 13, 2016. (Doc. 42.)

(Doc. 15 at 9–12.) Thus, according to Plaintiff, Alegis must be deemed a "debt collector" under the FDCPA as it "attempted to wrongfully use a security interest, the medical lien, to collect sums not owed and exempt from collection." (*Id.* at 14.) In this analysis, it is irrelevant "whether Alegis meets the general definition of 'debt collector,'" as is the exception upon which Alegis relies. (*Id.* at 14–15.) Second, Leet counters Alegis' "debt" argument by discounting *Gacy*'s import and contending that, under Louisiana law, "[b]alance billing is not allowed and the debt is always the debt of the patient." (*Id.* at 15–16.) Lastly, even though a majority of courts "agree that communications with an attorney are exempt from the FDCPA," "not all" do. (*Id.* at 16.) Perhaps more importantly, moreover, "[t]he alleged wrongful conduct is the filing of a lien, not simply communicating with an attorney," and the pertinent issues are "whether the debt was in default when assigned to Alegis, and whether Alegis asserted a security interest attempting to collect a debt not owed." (*Id.*) Considering this Court's obligation to interpret a pleading "liberally," Plaintiff maintains that these arguments militate in favor of denying the Rule 12 Motion. (*Id.* at 17 (citing to *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002)).)

### III.   DISCUSSION

#### A.   Legal Standard

##### 1.   *Rule 12(c)*

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c); *Lillian B. v. Gwinnett Cnty. Sch. Dist.*, 631 F. App'x 851, 852 (11th Cir. 2015). As with Rule 12(b)(6), a court may not consider any evidence outside the pleadings in weighing the merits of a Rule 12(c)

motion. *Hiller v. HSBC Fin. Corp.*, F. App'x 320, 322 (6th Cir. 2015). In addition, it must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) (citing *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)); *see also Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) ("The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."). Rule 12(c) provides "a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the competing pleadings." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014).

## 2. *Principles of Statutory Interpretation*

Statutory interpretation always begins with the enacted text. A court's review terminates if that language is both plain and unambiguous. *E.g.*, *Roberts v. Sea-Land Servs.*, 132 S. Ct. 1350, 1356, 182 L. Ed. 2d 341, 354 (2012) (quoting *Robinson v. Shell Oil Co.*, 519 U. S. 337, 340, 117 S. Ct. 843, 846, 136 L. Ed. 2d 808, 813 (1997)); *Tyler v. Douglas*, 280 F.3d 116, 123 (2d Cir. 2001) (quoting *Sullivan v. Cnty. of Suffolk*, 174 F.3d 282, 285 (2d Cir. 1999)), *cert. denied*, 536 U.S. 906, 122 S. Ct. 2361, 153 L. Ed. 2d 182 (2002). Indeed, though the result may be harsh or impractical, the written text must be applied. *See, e.g., Lamie v. U.S. Tr.*, 540 U.S. 526, 538, 124 S. Ct. 1023, 1032, 157 L. Ed. 2d 1024, 1036 (2004); *Cent. Trust Co. v. Official Creditors' Comm. of Geiger Enters., Inc.*, 454 U.S. 354, 360, 102 S. Ct. 695, 698, 70 L. Ed. 2d 542, 548 (1982) (per curium). In ascertaining a statute's degree of ambiguity or plainness, an interpreter must attend to "the language itself, the specific context in which that language is used,

and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341; *accord FCC v. AT&T*, 562 U.S. 397, 407, 131 S. Ct. 1177, 1184, 179 L. Ed. 2d 132, 141 (2011); *see also* Amir Shachmurove, *Sherlock's Admonition: Vindicatory Contempts as Criminal Actions for Purposes of Bankruptcy Code § 362*, 13 DEPAUL BUS. & COM. L.J. 67, 75 (2013). Context can prove critical since any ambiguity generated by a term's multiple ordinary meanings may be resolved only if "one of the[se] permissible meanings produces a substantive effect that is compatible with the rest of the law." *Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 380, 108 S. Ct. 626, 630, 98 L. Ed. 2d 740, 748 (1988), *quoted in AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 354, 131 S. Ct. 1740, 1754, 179 L. Ed. 2d 742, 760 (2011); *accord FCC*, 562 U.S. at 407; *Nken v. Holder*, 556 U.S. 418, 426, 129 S. Ct. 1749, 1756, 173 L. Ed. 2d 550, 561 (2009). In effect, "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its policy." *Colortex v. Richardson*, 19 F.3d 1371, 1375 (11th Cir. 1994). Throughout this textual exercise, distinct terms must never be conflated into a single one, for no court may thereby rewrite a statute and improve upon Congress' chosen terminology. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 449, 151 L. Ed. 2d 339 (2001); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574, 115 S. Ct. 1061, 1069, 131 L. Ed. 2d 1 (1995).

### 3.    *Short Overview of FDCPA*

The FDCPA is "designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker*, 677 F.2d at 777; *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring

dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope."). The realization of this purpose, however, is necessarily dependent on the patent meaning of the actual. *See supra* Part III.A.2. Per the FDCPA, a debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "Debt collector," in turn, "means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). However, this term does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt *which was not in default at the time it was obtained* by such person." *Id.* § 1692a(6)(F)(iii) (emphasis added).

As "default" is not defined in the FDCPA, courts have looked to contracts underlying the debt or other applicable statutes. *See, e.g., Hartman v. Meridian Fin. Serv., Inc.*, 191 F. Supp. 2d 1031, 1044 (W.D. Wis. 2002); *Skerry v. Ma. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 53–54 (D. Mass. 1999). By virtue of its unambiguous terms, the FDCPA has been held to be inapplicable to "collection efforts by those who obtained the right to payment on the debt before the debt was in default." *Franceschi v. Mautner–Glick Corp.*, 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998); *see also, e.g., Hoo-Chong v. Citimortgage, Inc.*, No. 15-CV-4051 (JS)(AKT), 2016 U.S. Dist. LEXIS 29377, at *6, 2016 WL 868814, at *3 (E.D.N.Y. Mar. 7, 2016) (collecting cases exempting mortgage servicers from FDCPA if they obtained the relevant mortgage before the

mortgagor defaulted); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 442 (E.D.N.Y. 2013) (same); *Turner v. Haw. First, Inc.*, 903 F. Supp. 2d 1037, 1046 (D. Haw. 2012) (summarizing case law and concluding that "many judicial decisions and federal regulations agree that default does not occur until well after a debt becomes outstanding" (internal quotation marks omitted)).

### B. Application

The foregoing principles support but one construction: Alegis itself is not a "debt collector." Undeniably, if the lien indeed constituted a "debt," Alegis easily fits § 1692a(6)'s definition of "debt collector," as Plaintiff maintains, (Doc. 15 at 14). However, as Alegis ably counters, (Doc. 31 at 4–5), § 1692a(6)(F)(iii) specially exempts collection efforts directed towards "a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). This paragraph exempts even an apparent debt collector from the FDCPA and cannot be disregarded, (*Cf.* Doc. 15 at 14–15), for the plain text always supersedes an unenacted purpose and must control, *see, e.g.*, *Robinson*, 519 U. S. at 340; *Edwards v. Valero Refining-Meraux, LLC*, No. 3:14-00772-JWD-EWD, 2016 U.S. Dist. LEXIS 9898, at *15 n.9, 2016 WL 355080, at *5 n.9 (M.D. La. Jan. 28, 2016) ("Indeed, laws can often have hard consequences, . . . but the words must control . . . .").

Accordingly, in accordance with this exception's undisguised import, this Court must hold the FDCPA inapplicable to any and all "collection efforts by those who obtained the right to payment on the debt before the debt was in default." *Franceschi v. Mautner–Glick Corp.*, 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998); *accord, e.g.*, *Fontell v. Hassett*, 870 F. Supp. 2d 395, 402 (D. Md. 2012); *Dantin*, 2005 U.S. Dist. LEXIS 46182, at *10–12, 2005 WL 6075786, at *3–4.

As another district court has noted, "the time of default, and not when the obligation is incurred, is the critical time period." *Hamilton*, 2003 U.S. Dist. LEXIS 8296, at *10, 2003 WL 21105100, at *3.[9] Indeed, the Fifth Circuit implicitly recognized as much when it affirmed this trial court opinion. *Hamilton*, 104 F. App'x at 944. In reaching its conclusion, three undisputed facts matter here: (1) Alegis was retained as Lane Regional's agent in June 2014; (2) it served the Lien on D'Aquilla on June 24, 2014; and (3) USAgencies made its payment to BCBSLA on August 21, 2014. *See supra* Part II.A.

These uncontested facts make clear that, per governing state law, the Lien only applied to "amounts to be collected . . . from another person on account of such injuries." LA. R.S. § 9:4752. By statute, then, only when funds were paid against which the Lien could possibly apply could she fail to pay an obligation due. *See Default*, BLACK'S LAW DICTIONARY (10th ed. 2014). Indisputably, Leet came into "possession of the right and responsibility to collect a [potential] debt" on or before June 24, 2014, the date when D'Aquilla was served. *See supra* Part II.A; *see also, e.g.*, *Hamilton*, 2003 U.S. Dist. LEXIS 8296, at *12–13, 2003 WL 21105100, at *4 (discussing the case law defining "obtain" in § 1692a(a)(F)(iii)); *Kvassay v. Hasty*, 236 F. Supp. 2d 1240, 1270 (D. Kan. 2002) (thusly defining "obtain"); *Franceschi*, 22 F. Supp. 2d at 254 (same). It was not possible, however, for Leet to be in default until she began to receive payment potentially subject to the Lien. *See, e.g.*, *Turner*, 903 F. Supp. 2d at 1046; *Hamilton*, 2003 U.S. Dist. LEXIS 8296, at *10, 2003 WL 21105100, at *3.

Here, as the record well shows, the first payment that could be so described did not arrive until August 21, 2014, more than fifty-eight (58) days after the Lien was served. *See supra* Part

---

[9] Though Plaintiff attempts to distinguish both *Dantin* and *Hamilton*, (Doc. 15 at 11–12), these cases' analysis of § 1692a(6)(F)(iii) is statutorily sound. The latter, moreover, was affirmed by the Fifth Circuit. *Hamilton v. Tower Solutions, Inc.*, 104 F. App'x 943 (5th Cir. 2004).

II.A. Consequently, as a matter of simple fact and plain federal law,[10] Leet was not in default when Alegis first obtained the Lien This conclusion is based on this law's plain text and the uncontested facts, and Alegis must therefore be deemed exempt from § 1692a(6) by operation of § 1692a(6)(F)(iii). *See, e.g.*, *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not."); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (concluding that the term "debt collector" does not include "the consumer's creditors . . . or an assignee of a debt, as long as the debt was not in default at the time it was assigned" (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985))).

Logic, moreover, supports this interpretation. To claim, as Plaintiff now does, that this construction means no "debt" could ever be in default when a lien is at issue may be accurate, but it nonetheless ignores the lexicographical distinction between a "lien" and a "debt." Under the FDCPA, the term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services . . . ." 15 U.S.C. § 1692a(5). A "lien" is something different, customarily defined as the "legal right or interest that a creditor has in another's property" that usually lasts "until a debt or duty that it secures is satisfied." *Lien*, BLACK'S LAW DICTIONARY. In other words, standing on its own, a lien is not a "debt." *See, e.g.*, *Beadle v. Haughey*, No. Civ. 04-272-SM, 2005 U.S. Dist. LEXIS 2473, at *7, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005); *cf. Warren v. Countrywide Home Loans,*

---

[10] At oral argument on June 15, 2016, Plaintiff attempted to elide this fact by describing her state law claims as "interrelated" with her FDCPA claim. Factually, this description may be accurate, but the laws derive from different sovereigns and cannot be subsumed into a single cause of action by legerdemain. Section 1692a(F)(6)(iii), as written and enacted by Congress, requires that a debt be in "default" when "obtained" for the FDCPA to apply. The statute cannot be rewritten to say otherwise.

*Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004). Certainly, "there is nothing in the statutory language to suggest that the term 'obtain' a debt should not be read to include the possession of the right and responsibility to collect a debt." *Franceschi*, 22 F. Supp. 2d at 254.[11] Under the Lien's plain terms, it secured no "debt" when it was "obtained"; it informed Leet of her duty to remit if and when she were to receive any payments in the future. Indeed, if Leet had never gotten a penny, the Lien would have remained inoperative and legally unenforceable, for neither the "debt" nor "duty" that it secured could ever arise. Leet, in other words, owed nothing on the day that the Lien was created and served, and she was indebted to no natural or artificial person, shadowed by no "debt" when Alegis actually obtained its interest. *See Baker v. PHC-Minden, L.P.*, 2014-2243 (La. 05/05/15); 167 So. 3d 528, 540 ("Pursuant to La. Rev. Stat. § 9:4753(A), the liens become effective 'if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice . . . is delivered by certified mail, return receipt requested, or by facsimile transmission with proof of receipt of transmission by the interested health care provider . . .' to the 'injured person . . . .'"). In the end, if this Court were to adopt the Plaintiff's conception of a "lien" as coterminous with a "debt," it would be ignoring the longstanding differences between these distinct legal interests. Because this Court is barred from redefining plain terms, *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 –79, 170 –73 (2012), it will not read "debt" in § 1692a(F)(6)(iii) to encompass a "lien,"

---

[11] ("The term 'obtain' is not defined in the . . . [FDCPA] itself, so that it cannot be presumed to signify ownership or assignment alone. In addition, the fact that Congress took pains to employ the term 'assignment' in other parts of the Act suggests that the broader term 'obtain' in Section 1692a(6)(F)(iii) should not be read so narrowly as to be rendered just a synonym of 'assignment.'").

## IV.  CONCLUSION

Once the FDCPA is construed pursuant to "well established principles of statutory construction," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073, 180 L. Ed 2d 967 (2012), Alegis cannot be designated "a debt collector." When the Lien was issued, no default had yet occurred, for Leet had received no payment to which the Lien could apply as a matter of law. Regardless of what occurred thereafter, § 1692a(6)(F)(iii) accords dispositive weight to this conclusion—and fully exempts Alegis from any liability under the FDCPA. Accordingly, the Rule 12(c) Motion for Judgment on the Pleadings, (Doc. 11), is GRANTED.[12]

Signed in Baton Rouge, Louisiana, on June 23, 2016.

_____
JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[12] While this Court grants dismissal of Plaintiff's FDCPA claims against Alegis, the issue of whether the Louisiana Anti-Balance Billing Statute applies to Alegis despite the state court's ruling, *see supra* note 8, will be decided after further briefing.