# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**VICTORIA LEET, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED**

**VERSUS**

**HOSPITAL SERVICE DISTRICT NO.
1 OF EAST BATON ROUGE PARISH,
d/b/a LANE REGIONAL MEDICAL
CENTER; ALEGIS REVENUE SOLUTIONS,
LLC; AND LOUISIANA HEALTH
SERVICE & INDEMNITY COMPANY, d/b/a
BLUE CROSS AND BLUE SHIELD OF
LOUISIANA**

**CIVIL ACTION**

**NO. 15-811-JWD-EWD**

## ORDER AND REASONS

### I.    Introduction

This matter comes before the Court on an issue raised *sua sponte* relating to the Court's

subject matter jurisdiction over Plaintiff Victoria Leet's ("Plaintiff") claims. On March 21, 2017,

the Court held a telephone status conference raising the issue of subject matter jurisdiction, at

which time it invited simultaneous briefing on the issue of jurisdiction. (Doc. 119.) On April 12,

2017, Defendant Hospital Service District No. 1 of East Baton Rouge Parish, Louisiana d/b/a

Lane Regional Medical Center ("Lane") filed its brief. (**Doc. 122.**) On April 13, 2017, Plaintiff

filed her brief and Defendant Louisiana Health Service & Indemnity Company d/b/a Blue Cross

and Blue Shield of Louisiana ("BCBSLA") filed its brief. (**Docs. 123** and **124**, respectively.) On

April 27, 2017, Plaintiff filed a reply memorandum. (**Doc. 125.**) For the reasons set forth below,

the Court holds that it lacks subject matter jurisdiction over this case, and remands it to the 19th

1

Judicial District Court for the Parish of East Baton Rouge of the State of Louisiana for further proceedings.

## II.    Background

This Court expounded in great detail upon the factual background of this case in its prior Ruling on Defendant Alegis Revenue Solution, LLC's ("Alegis") Rule 12(c) Motion for Judgment on the Pleadings (Doc. 45 at 3—5),[1] and this Ruling incorporates by reference the factual allegations set forth therein. *See Leet v. Hosp. Serv. Dist. No. 1 of East Baton Rouge Par., La.*, 15-811, 2016 WL 3554975 at *1—*2  (M.D. La. June 23, 2016) (deGravelles, J.). The Court will briefly summarize the procedural background relevant to this case.

On December 10, 2014, Plaintiff filed a class action petition for payment of a thing not due, for damages, for declaratory relief, and for injunctive relief in the 20th Judicial District Court for the Parish of West Feliciana ("20th JDC"). (Doc. 1-1 at 1—15.) The original petition named Lane and Alegis as defendants. (*See id.* at 1.) The petition alleged, *inter alia*, that at some point after receiving treatment at Lane for injuries Plaintiff sustained during a motor vehicle accident, Lane "filed a claim with [BCBSLA], which claim was paid by [BCBSLA] in the amount of $1477.74 with no deductible, no co-pay, and no co-insurance required for said treatment." (*Id.* at 3.)

On January 21, 2015, Plaintiff filed her first amending and supplemental class action petition, which once again named only Lane and Alegis as defendants. (*See id.* at 16.) In this second iteration of her petition, Plaintiff reiterated in identical language that BCBSLA paid the $1477.74 in full without seeking contribution from Plaintiff or any other source. (*Id.* at 18.)

---

[1] This Ruling dismissed Alegis from the case. *See generally*, *Leet*, 2016 WL 3554975.

On October 13, 2015—ten months after Plaintiff originally filed suit and one and a half months before removal to this Court—Plaintiff filed for leave of court to file a second amending and supplemental petition.[2] (*Id.* at 32.) For the first time, Plaintiff added BCBSLA as a defendant. (*See id.* at 34.) This iteration of the petition included more detailed factual allegations that related to Plaintiff's status as an enrollee of a BCBSLA-administered plan, BCBSLA's obligations under the plan, and Lane's status as a contracted health care provider, and its obligations to Plaintiff under its agreement with BCBLSA. (*See id.* at 35—36.) In addition to the counts previously alleged against Lane and Alegis, Plaintiff added two additional claims against BCBSLA to her class action petition.

In her first cause of action against BCBSLA ("Count III"),[3] Plaintiff alleged promise of performance for the breach of Lane's obligations arising out of Plaintiff's plan with BCBSLA and Lane's Member Provider Agreement with BCBSLA. (*Id.* at 46.) In subsequent briefing addressing subject matter jurisdiction, Plaintiff elaborates that this cause of action is based upon the civilian doctrine of *promesse de porte-forte*, codified at La. Civ. Code art. 1977,[4] which imposes liability as a result of "BCBSLA's role in providing contracted providers, not due to its role as a claim adjudicator." (Doc. 125 at 3.) In her second claim against BCBSLA ("Count IV"), Plaintiff alleges detrimental reliance, arguing that in relying on BCBSLA's promise that Lane would perform as agreed in the Member Provider Agreements and Plaintiff's plan, such reliance was to her detriment. (Doc. 1-1 at 47.)

---

[2] The record reflects that Plaintiff filed the October 2015 motion in the 19th Judicial District Court for the Parish of East Baton Rouge. (*See* Doc. 1-1 at 32.) The record in this Court does not provide the details surrounding the change of venue in state court.

[3] Count III also applies to all other health insurance providers for purposes of the class action, as does Count IV, *infra*.

[4] Article 1977, titled "Obligation or performance by a third person" provides: "The object of a contract may be that a third person will incur an obligation or render a performance. The party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform." La. Civ. Code art. 1977.

Importantly, Plaintiff retained the factual allegation that Lane "filed a claim with BCBSLA, which claim was paid by BCBSLA in the amount of $1477.74 with no patient deductible, co-pay, or co-insurance required for said treatment." (*Id.* at 36.) As in the previous iterations of her petition, Plaintiff further alleged that "On November 5, 2014, BCBSLA notified [Lane] of its obligations of the Member Provider Agreement to accept the funds paid by BCBSLA to [Lane] in the amount of $1,477.74, which amount represented the contracted reimbursement rate, and to refund any amounts collected over that amount to [Plaintiff] within 30 days of November 5, 2014." (*Id.* at 37.) In none of Plaintiff's petitions did she allege that BCBSLA initially denied coverage for the services she received at Lane. (*See generally*, *id.* at 1—53.)

On December 1, 2015, BCBSLA removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a), 1441(c), and 1446. (*See* Doc. 1.) As the basis for the Court's subject matter jurisdiction, BCBSLA alleged federal question jurisdiction, as "Plaintiff's claims for class benefits arise under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and are completely preempted by ERISA." (*Id.* at 4 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)).)

On February 15, 2016, Alegis moved for judgment on the pleadings pursuant to Rule 12(c),[5] and the Court held a hearing on the issue. (*See* Docs. 11, 48.) At the close of the hearing, the Court authorized Plaintiff to file a motion to amend her complaint or a motion for reconsideration of the state court ruling sustaining Alegis's peremptory exception of no cause of action. (Doc. 48.) On June 29, 2016—nearly eight months following removal—Plaintiff moved for leave of court to file her third amending and supplemental complaint and motion to

---

[5] While this matter was in the 19th JDC, the district court sustained Alegis's peremptory exception of no cause of action with respect to other claims Plaintiff lodged against Alegis. In her second amended complaint, Plaintiff alleged new theories of liability against Alegis, and it is these claims that Alegis sought to dispose of in this Court pursuant to its Rule 12(c) motion. (*See* Doc. 11-1 at 2.)

reconsider the state court ruling. (Doc. 47.) The motion to amend and supplement the complaint was limited to Plaintiff's attempts "to further clarify the allegations of the liability of [Alegis] for violations of the Anti-Balance Billing Act" and sought reconsideration of the state court ruling that previously granted Alegis's peremptory exception of no cause of action. (*Id.* at 3.) It made no attempt to expand or expound upon the claims relating to BSBSLA. By way of an Order, the Court held that because "the proposed complaint is predicated upon this Court reconsidering the state court[']s prior ruling, this Court will deny without prejudice that part of the Motion asking for leave to file an amended complaint and construe it entirely as a motion [for] reconsideration" and noted that if the motion for reconsideration was granted, Plaintiff could refile her motion to amend the complaint. (Doc. 48.) On December 19, 2016, the Court denied Plaintiff's motion for reconsideration and denied as moot Plaintiff's motion to amend the complaint. (*See* Doc. 85.) Plaintiff has made no subsequent attempts to amend her complaint.

On January 11, 2017, this Court held a class certification hearing. (*See* Doc. 94.) As the Court was in the process of evaluating the merits of the motion for class certification, a question arose in the Court's mind as to whether ERISA completely preempted any of Plaintiff's claims (and thus whether this Court can exercise subject matter jurisdiction over this case). On March 21, 2017, the Court held a telephone status conference to address the issue of subject matter jurisdiction and invited briefing on the matter. The parties submitted their respective briefs, and Plaintiff filed a reply. (*See* Docs. 122—125.)

## III. Discussion

### a. Standard

#### i. Remand Standard

Pursuant to 28 U.S.C. § 1331, this court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." "It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (internal citation omitted).

The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). "As 'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.' " *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365–66 (5th Cir. 1995)).The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007); *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.")

28 U.S.C. 1447(c), which governs the motion to remand, provides "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  A lack of subject matter jurisdiction may be raised at any time, and can be raised

by the Court *sua sponte*. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) (citing, *e.g.*, *Free v. Abbott Labs, Inc.*, 164 F.3d 270, 272 (1999); *Bank One Tex., N.A. v. United States*, 157 F.3d 397, 399 (5th Cir. 1998)).

### ii. Federal Question Jurisdiction Under ERISA

According to the well-pleaded complaint rule, "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). The plaintiff must directly establish the grounds for federal jurisdiction by expressing the complaint's basis in federal law.

A "plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is also available." *Bernhard v. Whitney Nat'l Bank,* 523 F.3d 546, 551 (5th Cir. 2008). "Under this 'well-pleaded complaint' rule, a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." *Id.*

However, an exception to the well pleaded complaint rule is complete preemption. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Even if the grounds for federal jurisdiction are not expressly indicated in the complaint, if the issue touches a completely

preempted area of federal control then federal subject matter jurisdiction is automatically warranted.

Although complete preemption precludes the state courts from establishing concurrent subject matter jurisdiction over the issue, conflict preemption will not cause the immediate establishment of exclusive federal jurisdiction. "[A] district court has discretion to remand a case involving solely arguably conflict-preempted causes of action." *Giles*, 172 F.3d at 338. While complete preemption deals with the federal government's monopoly of the legal issue's subject matter jurisdiction, conflict preemption prevents the state law from legally existing in contradistinction to the opposing federal law. "The presence of conflict-preemption does not establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict preemption serves as a defense to a state action." *Id.* at 337.

ERISA provides a uniform regulatory regime over employee benefit plans. "To this end, ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208. Pursuant to Section 502(a) of ERISA, Congress has set forth a detailed civil enforcement mechanism that reflects the enactment of a comprehensive statute for the regulation of employee benefit plans. *Id.* "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

State law causes of action are completely preempted by ERISA § 502(a)(1)(B), thereby establishing federal question removal jurisdiction, only when "an individual, at some point in

8

time, could have brought his claim under ERISA § 502(a)(1)(B),[6] and where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210. By contrast, ERISA's broader conflict preemption provision, ERISA § 514, 29 U.S.C. § 1144,[7] does not provide removal jurisdiction, but merely serves as an affirmative defense to claims that are not completely preempted. *See, e.g.*, *Giles*, 172 F.3d 332, 336–37. "When a complaint raises both completely-preempted claims and arguably conflict-preempted claims, the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction (formerly known as 'pendent jurisdiction') over the remaining claims." *Id.* at 337–38 (footnote omitted). Accordingly, as long as ERISA completely preempts at least one claim, this Court has subject-matter jurisdiction over the above-captioned matter. *Davila,* 542 U.S. at 209.

In short, if a claim is subject to conflict preemption, the issue remains a state issue, and the apparent issue of conflict preemption may preclude the validity of the law but must be enforced within the jurisdiction of the state courts. On the other hand, complete preemption automatically renders the claim within the purview of federal question jurisdiction.

### b. Parties' Arguments

The parties unanimously agree that the Court has subject matter jurisdiction, albeit for different reasons. The Court will briefly summarize the parties' respective positions relative to this Court's jurisdiction.

### i. Plaintiff's Memorandum (Doc. 123)

---

[6] ERISA § 502(a)(1)(B) states: "A civil action may be brought—(1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).
[7] ERISA § 514 provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described" in ERISA. 29 U.S.C. § 1144.

Plaintiff immediately notes that a number of similar cases have been removed to federal courts across the state, and then remanded for lack of subject matter jurisdiction. (Doc. 123 at 1.) She briefly outlines the similar cases that were removed and subsequently remanded, and then attempts to distinguish each of these cases from the instant case. (*See id.* at 2—6 (citing *Anderson v. Ochsner Health Sys.*, 11-2236, 2012 WL 2116173 (E.D. La. June 11, 2012); *Stewart v. Ruston La. Hosp. Co., LLC*, 12-1021 (W.D. La.) Doc. Nos. 35, 41; *Emigh v. West Calcasieu Cameron Hosp.*, 14-2808, 2015 WL 4209230 (W.D. La. July 10, 2015); *Williams v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 15-2268, 2015 WL 5774867 (E.D. La. Sept. 30, 2015)).) She notes that in some of these cases, the health care provider was named as a defendant, while in others it was not. Nonetheless, she maintains that the instant case is distinguishable from those cited above.

Plaintiff avers that the legal analysis of the cited cases was correct under the facts presented in those cases. (*Id.* at 6.) The instant case is distinguishable because unlike the cases cited above, "there is evidence that BCBSLA denied claims for the purpose of delaying adjudication and payment, thus giving the provider time to collect from the third party claim of plaintiffs." (*Id.*) On the other hand, the other cases did not contain an allegation "that the insurers failed to properly adjudicate and determine claims." (*Id.*) For example, in *Emigh*, the court remanded after finding "that the plaintiff were not claiming they were either wrongfully denied coverage, or that the administration of a claim was improper." (*Id.*) However, "in this case, there is evidence that BCBSLA wrongfully denied coverage, delaying payment of the claim, in order to allow the provider to wrongfully collect from its insured." (*Id.*) Plaintiff insists this is a meaningful distinction that places this case beyond the purview of *Emigh*. (*Id.*) Thus, Plaintiff alleges that because at least one of her claims in this case implicates a denial of coverage, it

necessarily requires an interpretation of an ERISA plan, and it is therefore subject to ERISA's complete preemption.

Plaintiff insists this Court "has federal-question jurisdiction over, at a minimum, the named plaintiff's claim, [and therefore] it has supplemental jurisdiction over the claims of all class plaintiffs." (*Id.* at 7.) Thus, according to Plaintiff, the only remaining issue for the Court to decide "is whether, under the circumstances of this case, the Court should exercise jurisdiction over all claims, or whether it should abstain from exercising jurisdiction." (*Id.* (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005)).) Plaintiff notes that while 28 U.S.C. § 1337(a) grants federal courts with broad supplemental jurisdiction over claims related to a claims over which the courts have original jurisdiction, this "broad grant is tempered by Section 1337(c)[.]" (*Id.*) Section 1337(c) permits a court to decline exercising supplemental jurisdiction if any of the following factors are satisfied: (1) the claim raises a novel or complex issue of state law; the claim substantially predominates over the claim over which the court has original jurisdiction; (3) the court dismissed all claims arising under the court's original jurisdiction; or (4) there are other exceptional and compelling reasons to decline jurisdiction. (*Id.* at 7—8 (quoting 28 U.S.C. § 1337(c)).)

Plaintiff urges the Court to exercise supplemental jurisdiction over the claims over which it does not have original jurisdiction. In support, she argues that "[w]hen plaintiffs' counsel began this series of balance billing cases,[8] there were a number of unresolved issues" that Louisiana appellate courts and the Louisiana Supreme Court have since resolved. (*Id.* at 8.) Thus, according to Plaintiff, there are "few, if any, novel or complex issues of state law remaining to be resolved" and she insists the first factor of Section 1337(c) militates in favor of exercising

---

[8] Plaintiff is represented by the same attorneys that represented the class in *Anderson*, *Williams*, *Emigh*, and others.

supplemental jurisdiction. (*Id.* at 9.) Plaintiff also asserts that a number of plaintiffs in the putative class action (possibly as many as half) will be covered by an ERISA-governed plan, which also weighs in favor of jurisdiction. (*Id.*) Finally, she reminds the Court of the "importance Congress has placed upon ERISA disputes being resolved in federal court" and that ERISA's broad scope underscores this congressional intent. (*Id.*)

### ii. Lane's Brief (Doc. 122)

Lane submits that the Court has subject matter jurisdiction over Plaintiff's claims because they are at least, in part, completely preempted under ERISA, and therefore BCBSLA's removal of the case to this Court was proper under 28 U.S.C. § 1441. (Doc. 122 at 1.) Citing Supreme Court jurisprudence, Lane insists that ERISA's "expansive preemption provisions" were intended to ensure that ERISA-regulated plans would be exclusively a federal concern. (*Id.* (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal citation omitted)).) It insists that while Plaintiff's state law claims, such as her claim for breach of a *promesse de porte-forte* pursuant to La. Civ. Code art. 1977, "attempt to provide remedies beyond those that ERISA authorizes[, they do] not place those claims outside the scope of ERISA's civil enforcement mechanism." (*Id.* at 1—2 (citing *Davila*, 542 U.S. at 201).)

Noting that ERISA preemption applies if the claim at issue requires an interpretation of an ERISA-regulated plan and the claim implicates a relationship governed by ERISA, Lane asserts that both elements are satisfied in this case. (*Id.* at 2 (citing *Gulf Coast Plastic Surgery v. Standard Ins. Co.*, 562 F. Supp. 2d 760, 767 (E.D. La. 2008) (internal citation omitted)).) It argues that Plaintiff, "a beneficiary of an ERISA plan, filed suit against the third party administrator of her plan [BCBSLA]. Thus, her claims implicate a relationship governed by ERISA." (*Id.* (citing *Emigh*, 2015 WL 4209230 (W.D. La. July 10, 2015)).) It distinguishes the

*Stewart* opinion from the instant one because in that case, unlike here, the plaintiff did not name a principal ERISA entity, and because the "plaintiff's claims against the hospital did not implicate a relationship governed by ERISA and no interpretation of the plan was required, ERISA did not completely preempt plaintiff's claims." (*Id.*) Further, it insists that Plaintiff's claims, as alleged, meet the second prong for complete preemption because they will "require an interpretation of her ERISA plan" because she claims her contract with BCBSLA entitled her to receive benefits under the contract (namely that a contracted health care provider would not pursue collection from her beyond the deductible, copayments, coinsurance, and other sums that might be owed under the terms of the insurance policy). (*Id.* at 3.) It also cites Plaintiff's briefing with respect to the class action certification that she has an ERISA cause of action against BCBSLA because of the manner in which it handled her claim. (*Id.* (citing Doc. 63 at 10, n.16).)

Accordingly, Lane avers that based upon Plaintiff's allegations, "it is clear that an interpretation of the ERISA plan will be required in this matter" because the Court will need to consider the insurance policy to ascertain whether BCBSLA promised Plaintiff that Lane would only collect the deductible, copayment, or coinsurance. (*Id.* at 3—4.) In other words, the Court will need to consider the insurance policy to determine whether BCBSLA breached it. (*Id.* at 4.) Because resolution of Plaintiff's claims necessarily hinges upon this Court's interpretation of Plaintiff's ERISA-regulated plan, her claims are necessarily preempted by ERISA, thereby conferring jurisdiction upon the Court. (*Id.*) Lane reiterates Plaintiff's position that *Emigh* is distinguishable because unlike the instant case, in *Emigh* there was no allegation that BCBSLA initially denied coverage. (*Id.* (citing 2015 WL 4209230).) Thus, Lane insists that "*Emigh* is not binding on whether this Court maintains subject matter jurisdiction." (*Id.*) Finally, Lane argues that with respect to Plaintiff's claims not completely preempted by ERISA, the Court should

exercise its supplemental jurisdiction over these claims. (*Id.* at 5 (citing *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337—38 (5th Cir. 1999)).)

### iii. BCBSLA's Brief (Doc. 124)

BCBSLA argues that because Plaintiff seeks benefits promised under an ERISA-regulated plan, her claims are completely preempted and this Court therefore has subject matter jurisdiction over this case. (Doc. 124 at 3.) BCBSLA asserts that while jurisdiction is usually assessed on the basis of the complaint (i.e. the well-pleaded complaint rule), when a statute completely preempts a state law cause of action, the state claim may be removed, and such is the case here. (*Id.* (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Davila*, 542 U.S. at 207 (internal citation omitted)).)

BCBSLA insists that Plaintiff's claims against it are subject to complete preemption. (*Id.* at 4.) Although styled as state law claims for breach of a promise to perform under the plan and for her detrimental reliance on the plan, these claims nonetheless fall within the purview of ERISA and are therefore subject to complete preemption. (*Id.* at 5.) In order to not be subject to preemption, the claim at issue must arise independently of the ERISA plan and its terms. (*Id.* (citing *Davila*, 542 U.S. at 211).) Conversely, "if interpretation of the ERISA plan terms is essential to adjudicating the claim, and if defendant's liability exists only because of its administration of the plan, then ERISA completely preempts the claim." (*Id.* (citing *Davila*, 542 U.S. at 213—14).) BCBSLA insists this rule does not only encompass denials of coverage, but also "any claim for 'benefits promised.'" (*Id.* (citing *Davila*, 542 U.S. at 210.) Because here, according to BCBSLA, all of Plaintiff's claims are derived from the ERISA-regulated plan, it necessarily follows that her claims are subject to complete preemption. (*Id.* at 5—6.) BCBSLA cites several cases that support this conclusion. (*See id.* at 7—8 (citing *Coughlin v. Health Care*

*Serv. Corp.*, 244 F. Supp. 2d 883, 885 (N.D. Ill. 2002); *Clancy v. Employers Health Ins. Co.*, 82

F.Supp.2d 589, 592 (E.D. La.1999), *aff'd*, 248 F.3d 1142 (5th Cir. 2001) (unpub'd), *cert. denied*,

534 U.S. 820 (2001); *Arana v. Ochsner Health Plan*, 338 F.3d 433, 435, 438 n.8 (5th

Cir.2003)).)

Next, BCBSLA argues that the cases which remanded under similar circumstances are

either distinguishable or wrongly decided. (*Id.* at 9.) According to BCBSLA, unlike here, *Gulf

Coast Plastic Surgery, Inc. v. Standard Ins. Co.* did not involve the interpretation or

administration of an ERISA plan. (*Id.* (citing 562 F. Supp. 2d at 763).) In *Stewart*, the plaintiff's

insurer was not named as a defendant. (*Id.*) Here, by contrast, BCBSLA avers that an issue in

this case is the relationship between Plaintiff and BCBSLA, which is "governed by ERISA and

only ERISA… The Court must interpret Plaintiff Leet's ERISA Plan to adjudicate her claims

against BCBLA." (*Id.* at 10.) It insists the *promesse de porte-forte* claim, "if it exists at all, exists

only in the Plan documents and its interpretation only lies with the Plan Administrator." (*Id.*)

BCBSLA insists that because *Stewart* and *Gulf Coast* did not involve the interpretation of an

ERISA plan, they do not "provide any guidance to the Court in the instant case, and the Court

should disregard them in determining the subject matter jurisdiction question." (*Id.*)

Next, BCBSLA submits that both *Emigh* and *Williams* involved similar claims to those at

issue here, but the Court should nevertheless disregard these cases, as they were both wrongly

decided. (*Id.*) It argues that these cases completely missed the point when it held that the

plaintiff's claims were based in state law because the breach of the *promesse de porte-forte* and

the detrimental reliance that the plaintiff alleged arose solely by virtue of the ERISA-regulated

plan, and thus the courts erred by finding that ERISA does not completely preempt the plaintiff's

state law claims. (*Id.* at 11.) It insists that the holding reached in *Emigh* and *Williams* "is an

inexplicable holding that flies in the face of Fifth Circuit and Supreme Court precedent finding that ERISA completely preempts other types of claims, such as settlement and subrogation claims." (*Id.* at 12 (citing *Dedeaux*, 481 U.S. at 54; *Arana*, 338 F.3d at 438).)

### iv.   Plaintiff's Reply Memorandum (Doc. 125)

Plaintiff reiterates her position that *Emigh* and *Williams* were properly decided because in those cases, "there was no evidence that an ERISA plan third party administrator improperly denied or administered a claim… In contrast, in this case, there is evidence that BCBSLA improperly denied the claim for treatment of Ms. Leet." (Doc. 125 at 1.) She once again insists that the Court has ERISA jurisdiction over some of her claims, and that it should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (*Id.*) Under Section 1367(c), Plaintiff cites a number of factors for the Court to consider in determining whether to exercise supplemental jurisdiction, including "judicial economy, convenience, fairness, and comity" and insists that all these factors weigh in favor of exercising jurisdiction over her claims. (*Id.* at 1—2.) This is particularly true in light of the fact that "this Court has already expended considerable effort in considering state law issues, and has held a hearing on class certification" and if remanded, the state court would have to conduct another class certification hearing, which weighs in favor of exercising jurisdiction. (*Id.*)

Addressing the arguments BCBSLA made in its brief, Plaintiff submits that *Coughlin*, *Clancy*, and *Arana* were all rendered before the Supreme Court issued its opinion in *Davila*, and all three have been superseded (expressly in the case of *Coughlin*, impliedly in *Clancy* and *Arana*) by *Davila*. Plaintiff insists that post-*Davila* cases in the Fifth Circuit have held that a claim arising out of state law is not subject to complete preemption "just because it implicates or refers to an ERISA plan. That is not the test set forth in *Davila*… Recovery under La. C.C. art[.]

1977 does not duplicate, supplement, or supplant any relief under ERISA. It creates an independent general duty which is not preempted by ERISA." (*Id.* at 3 (citing *Davila*, 542 U.S. at 210).)

### c. Analysis

At the outset, the Court finds that Plaintiff is correct in her contention that *Emigh* and *Williams* were correctly decided under the facts of those cases. Like the Court in *Williams*, this Court also rejects BCBSLA's argument that *Emigh* was wrongly decided under the facts presented in that case.[9] *See* 2015 WL 5774867, at *7 ("In this case, BCBSLA argues that *Emigh* 'is just wrong.'… After reviewing the complaint and applicable law regarding ERISA pre-emption, this court finds that the reasoning of *Emigh*, 2015 WL 4209230 is correct and remand is appropriate."). However, for the reasons set forth below, the Court finds that this case is indistinguishable from *Williams* and *Emigh*, and those cases guide the Court's analysis in the case at bar, and compel the same conclusion.

Plaintiff's argument proceeds that *Emigh* and *Williams* were correctly decided under the facts of those cases because there was never an allegation that the health insurer wrongfully denied coverage, and therefore the claims did not implicate an ERISA-regulated policy. "On the other hand, the facts of this case are different due to evidence that BCBSLA used the adjudication process to delay payment in order to allow Lane Regional to balance bill." (Doc. 125 at 4.) However, Plaintiff made no such allegation in her complaint. To the contrary, Plaintiff's second amending and supplemental class action petition (the most recent iteration of her complaint) includes the following allegations with respect to BCBSLA:

> At some point after the afore[-]described treatment, [Lane] filed a claim with BCBSLA, which claim was paid by BCBSLA in the amount of $1,477.74 with no patient deductible, co-pay, or co-insurance required for said treatment… On

---

[9] The attorneys for BCBSLA and for plaintiffs are the same here as they were in the *Emigh* and *Williams* cases.

> November 5, 2014, BCBSLA notified [Lane] of its obligations under the Member
> Provider agreement to accept the funds paid by BCBSLA to [Lane] in the amount
> of $1,477.74, which amount represented the contracted reimbursement rate, and to
> refund any amounts collected over that amount to [Plaintiff] within 30 days of
> November 5, 2014.

(Doc. 1-1 at 36, 37.) Plaintiff maintained this position throughout this litigation. (*See*, *e.g.*, Doc. 78 at 11.) In fact, it was not until the issue of subject matter jurisdiction arose that Plaintiff alleged that BCBSLA initially denied payment. While Lane and BCBSLA have previously claimed that BCBSLA initially denied payment, Plaintiff at all times maintained that BCBSLA processed the claim and timely paid Lane for services Plaintiff received. (*See*, *e.g.*, Docs. 78 at 11; 81 at 3; 84 at 5—6.)

Furthermore, in addition to the inconsistent factual allegations, Plaintiff seemingly takes a contradictory position as to ERISA preemption now than she did earlier in this proceeding, and the Court is inclined to hold that judicial estoppel applies to her contentions and serves to bar her from alleging that her claims are subject to preemption. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000) ("Th[e] rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'"); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 260 (5th Cir. 2012) ("The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding."); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"). In this case, in the context of class certification, Plaintiff expressly and strenuously argued that her

claims are not preempted by ERISA.[10] (*See* Doc. 63 at 15—18.) In light of the position that Plaintiff has adopted throughout this litigation (until the issue of subject matter jurisdiction was raised), the Court will not give credence to her position that ERISA is implicated by virtue of BCBSLA's actions in this matter.

Plaintiff has not asked to amend her complaint to allege new factual allegations against BCBSLA. Even if she had done so, she would not be permitted to amend her complaint to allege new factual allegations to create jurisdiction. *See*, *e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrian*, 490 U.S. 826, 831 (1989) ("But § 1653 speaks of amending '*allegations* of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves.") (emphasis original);[11] *In re Katrina Canal*

---

[10] Specifically, Plaintiff alleged:

> Both BCBSLA and Lane Regional argue that because Plaintiff's health insurance coverage is under an ERISA plan, her claims arise under federal law and therefore the Plaintiff has no valid claim against either BCBSLA or Lane Regional under the Balance Billing Act or any other Louisiana law… Defendants' arguments lack merit.

> Lane Regional argues that "…plaintiff's claims are unique because Blue Cross was acting merely as a Third Party Administrator for a self-funded plan…" The claims of Plaintiff are not unique, and in fact, all of these balance billing cases throughout Louisiana involve claims where the insurer is an ERISA Plan administered by Blue Cross, United Healthcare, or other third party administrators. This has not resulted in ERISA preemption being found applicable in any of these cases. In fact, in both federal and state courts it has been recognized that health care providers are not ERISA entities, and ERISA preemption does not apply.

> …

> [E]ven if BCBSLA is not a health insurance issuer, it contracts with providers to arrange for access to contracted providers by enrollees or insureds. Thus, regardless of whether BCBS[LA] is a "health insurance issuer," Lane Regional is a "contracted health care provider" for purposes of the [Balance Billing Act]. While Lane is a contracted provider under La. R.S. 22:1871 *et seq*, it is not an ERISA entity under federal law. Therefore, complete preemption does not relieve Lane Regional from liability under Louisiana law.

> Similarly, the conflict preemption does not apply to the claims against BCBSLA based upon La. C.C. art. 1977. In the case of *Emigh v. W. Calcasieu Cameron Hosp.*, 2:14-CV-02808, 2015 WL 4209230 [ ] (W.D. La. July 10, 2015), the issue was whether complete preemption applies in this type of case when the defendant is a third party administrator of a self-funded plan. The Court held that complete preemption did not apply because the plaintiff's claims against the third party administrator were based upon La. C.C. art. 1977… After briefing and argument the Court rejected th[e] argument [that conflict preemption applied], ruling that ERISA conflict preemption did not apply. It is submitted that that decision was correct.

(Doc. 63 at 15—18.)

[11] 28 U.S.C. § 1653 provides: "[d]effective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

*Breaches Litig.*, 342 Fed. App'x 928, 931 (5th Cir. 2009) (internal citation omitted) ("the new claims… added in the second amended complaint cannot be relied upon to establish subject matter jurisdiction because while a plaintiff may amend a complaint to cure inadequate jurisdictional allegations, amendment may not create subject matter jurisdiction where none exists."); *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) (quoting *Newman-Green*, 490 U.S. at 831, 832 n.5 ("While a district court can 'remedy inadequate jurisdictional allegations,' it cannot remedy 'defective jurisdictional facts.'").  As it currently stands, the allegations in Plaintiff's complaint do not implicate an ERISA-regulated plan, nor are they subject to complete preemption, as the factual issues here require an interpretation of the contract between *BCBSLA and Lane* (which is not an ERISA-regulated policy), and not the ERISA-regulated policy between *Plaintiff and BCBSLA*.

Accordingly, in light of the foregoing and following an independent review of the record, the Court holds that ERISA does not preempt Plaintiff's claims. Consistent with the holding and rationale in *Emigh* and *Williams*, the Court finds that it lacks subject-matter jurisdiction over Plaintiff's claims and this case must be remanded. *See Emigh*, 2015 WL 4209230, at *7 ("The secondary argument that the employer-sponsors and third-party administrators are solidarily liable for [the hospital's] actions does not convert this suit into an ERISA case. In seeking to impose solidary liability, plaintiffs are not relying on ERISA or the particular terms of an ERISA plan. Rather, plaintiffs are retying [sic] on independent state-law duties, *i.e.* breach of a *promesse de porte-fort[e]* and detrimental reliance. Under the *Davila* standard, such arguments do not fall within the scope of ERISA[.]"); *Williams*, 2015 WL 5774867 at *7 ("this court finds that the reasoning of *Emigh*[ ] is correct and remand is appropriate. As in *Emigh*, plaintiffs in the case at bar have stated Louisiana state-law claims against BCBSLA under La. Civ. Code art. 1977 for a

breach of a *promesse de porte-forte* and a claim for detrimental reliance. These claims rely solely on Louisiana law, not ERISA, and will not require an interpretation of the plan. Rather [the hospital's] billing practices are the relevant facts, and the insurers' liability is alleged to arise by operation of Louisiana law, not the ERISA plan."). Because Plaintiff has failed to allege facts that distinguish the instant case from *Williams* and *Emigh*, the Court is persuaded that it must follow suit and remand this action, and that Plaintiff must endure the same fate as those in the Eastern and Western Districts and pursue this action in state court.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that this Court lacks subject matter jurisdiction over Plaintiff's claims;

**IT IS FURTHER ORDERED** that this case is remanded to the 19th Judicial District Court for the Parish of East Baton Rouge of the State of Louisiana for further proceedings.

Signed in Baton Rouge, Louisiana, on <u>August 31, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**